UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ALEXANDER MORFIN-RIOS,<br><br>　　　　　　　　　　　Defendant. | Case No.: 3:18-cr-04997-JAH<br><br>**ORDER:**<br><br>**(1) DENYING MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i);**<br><br>**(2) DENYING AS MOOT MOTION TO APPOINT COUNSEL.**<br><br>**(ECF Nos. 37, 40)** |

I.

INTRODUCTION

Defendant Alexander Morfin-Rios ("Defendant" or "Mr. Morfin-Rios"), through counsel, filed a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ("Mot.", ECF No. 40). The Government opposed the motion, ("Opp'n", ECF No. 42), and Defendant replied, ("Reply", ECF No. 43). Defendant thereafter filed a Notice of Supplemental Authority in support of his Motion. (ECF No. 44). For the reasons set forth below, the Court **DENIES** Defendant's Motion.

///

## II.
## BACKGROUND

On February 21, 2019, Defendant pleaded guilty to a one-count Information charging him with Importation of Methamphetamine, in violation of 21 U.S.C. §§ 952 and 960. ("Plea Agreement", ECF No. 21). At sentencing, this Court sentenced Mr. Morfin-Rios to a mandatory minimum of 120-months in custody, followed by five years of supervised release—thirty-one months lower than the low-end of the Guideline range of 151-188 months. (Tr. June 21, 2019 at 5:12-6:4, ECF No. 39). Defendant is currently incarcerated at FCI Mendota in California, and at the time of this Order, has served approximately 56-months in custody. Defendant's expected release date is October 10, 2026.[1]

## III.
## LEGAL STANDARD

A court generally may not correct or modify a prison sentence once it has been imposed, unless expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure. *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003). Defendant seeks modification of his sentence under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). The amendment to § 3582(c)(1)(A) provides prisoners with two direct routes to court: (1) file a motion after fully exhausting all administrative rights to appeal a failure of the Bureau of Prison's decision not to bring a motion on defendant's behalf, or (2) file a motion after "the lapse of 30 days from the receipt ... of such a request" by the warden of the defendant's facility, "whichever is earlier." *See* 18 U.S.C. § 3852(c)(1)(A).

---

[1] Federal Bureau of Prisons, FIND AN INMATE, ://www.bop.gov/inmateloc/ (last visited June 27, 2023). The Court takes judicial notice of the BOP website and information contained therein. *See Gent v. CUNA Mut. Ins. Society*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (court may take judicial notice of the contents of federal agencies' websites that are not subject to reasonable dispute).

Thereafter, the Court may determine whether "extraordinary and compelling reasons warrant such a reduction" and whether "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The Court also considers whether a reduction would be consistent with the § 3553(a) factors.

## IV.

## DISCUSSION

Defendant seeks relief on the basis of his unusually long sentence,[2] his mother's failing health, his rehabilitation, and a combination of these bases. (Mot. at 15).

### A. Exhaustion of Administrative Remedies

As a threshold matter, the Court must determine whether Defendant has administratively exhausted his claim by first filing a request with the Warden of the Bureau of Prisons. It is the Government's position that a defendant must exhaust with the warden every issue raised in his or her motion to the court. (Opp'n at 4-5). Mr. Morfin-Rios did not request relief on the basis of an "unusually long sentence" to the Warden of FCI Mendota.[3] (Ex. A, ECF No. 40-1 at 19). Defendant contends that the Government argues in favor of an "issue-exhaustion" requirement, which is inappropriate in light of the plain language of § 3852(c)(1)(A) and recent Supreme Court caselaw. (Reply at 1-2).

The Ninth Circuit has not specifically addressed whether imposing an "issue exhaustion" requirement for § 3582 motions is appropriate, and district courts within this Circuit have not found any unanimity on the matter. *Compare United States v. Bakhtiari*, No. CR 18-0009 WHA, 2022 WL 1289050 (N.D. Cal. Apr. 30, 2022) (finding issue exhaustion is required); *and United States v. Narez*, No. 1:05-cr-00231-AWI, 2021 WL 5566787 (E.D. Cal. Nov. 29, 2021); *and United States v. Roueche*, No. CR07-344RSL,

---

[2]   Mr. Morfin-Rios' requested relief is a reduction in his term of confinement from 120-months to a term of 60-months.

[3]   Defendant's letter to the Warden requested relief on the basis of the COVID-19 pandemic and to serve as a caregiver to his ailing mother. (Ex. A, ECF No. 40-1 at 19).

3

2021 WL 2778577 (W.D. Wash. Jul. 2, 2021); *with United States v. Sawyers*, No. CR 15-00070-RSWL-1, 2021 WL 2581412 (C.D. Cal. Jun. 22, 2021) (finding issue exhaustion is not required); *and United States v. Pacarro*, No. 15-00704 HG-02, 2020 WL 7344590 (D. Haw. Dec. 14, 2020) (reversed on other grounds).

Presently, the Seventh Circuit is the only circuit court to explicitly address this issue. *See United States v. Williams,* 987 F.3d 700, 703 (7th Cir. 2021) (per curiam). The court in *Williams* held that issue exhaustion is prescribed by § 3582(c)(1)(A)'s regulatory scheme and statutory language. The Seventh Circuit reasoned that a finding to the contrary overlooked the purpose of § 3582(c)(1)(A)'s exhaustion requirement "to provide the Bureau with the information necessary to move for release on a defendant's behalf." *Id.* In addition, the *Williams* court had concerns that rebuffing specific issue exhaustion ignored the "Bureau's regulation requiring an inmate to detail the circumstances warranting his compassionate release." *Id.*

The Court finds the reasoning in *Williams* persuasive. Defendant asserts that the Supreme Court in *Sims* " 'warned against reflexively' applying issue exhaustion to judicial review of agency action." (Reply at 2 (citing *Sims v. Apfel*, 530 U.S. 103, 110 (2000)). However, "§ 3582(c)(1)(A)'s exhaustion requirement more closely resembles the exhaustion requirement in the Prison Litigation Reform Act . . . than the Social Security regulations addressed in *Sims*. Th[e Prison Litigation Reform] Act requires proper exhaustion of available administrative remedies in order to afford prisons an opportunity to address issues before they are brought to federal court." *Williams*, 987 F.3d at 703 (citing *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); § 1997e(a)) (internal citations and quotation marks omitted). This interpretation aligns with "good policy . . . [that] allows the government to implement an orderly system for reviewing compassionate-release applications, rather than one that incentivizes line jumping." *United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021) (citing *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020)). As such, the Court finds that Mr. Morfin-Rios did not properly exhaust the issue of a sentencing disparity, but properly exhausted the remaining issues submitted to the BOP

for consideration. Nonetheless, the Court will discuss the merits of Mr. Morfin-Rios' motion for compassionate release in toto.

### B.   Extraordinary and Compelling Reasons Warranting a Sentence Reduction

In support of his Motion, Mr. Morfin-Rios presents two arguments in furtherance of the position that he presents extraordinary and compelling basis for a sentence reduction: (1) the disparity between the sentence received and the sentence that he might have received with Safety Valve; and (2) his mother's failing health and the need to provide support. (*See* Mot. at 15-25). Each circumstance will be discussed in turn.

#### 1.   Mr. Morfin-Rios' Sentence

Mr. Morfin-Rios requests a reduced sentence, arguing the length of his sentence constitutes an extraordinary and compelling circumstance. (Mot. at 8). Mr. Morfin-Rios relies on the Ninth Circuit decision in *United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021), ("Lopez") in support of his proposition. (*Id.* at 21). Therein, the Ninth Circuit interpreted the Safety Valve provision in § 3553(f)(1) to read in the conjunctive—that is, to be ineligible for Safety Valve, a defendant's criminal history must feature all three of the conditions specified in subparagraphs (A), (B), and (C). *See Lopez*, 998 F.3d at 443 (holding that "§ 3553(f)(1)'s 'and' is unambiguously conjunctive"). The Government's opposition only dedicates a footnote to address Mr. Morfin-Rios' argument, objecting solely on the basis that Mr. Morfin-Rios did not proffer any information as required for Safety Valve eligibility. (Opp'n at 2, fn.1).

Section 3553(f), commonly called Safety Valve, requires the court to find that—

(1) the defendant does not have—

    (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;

    (B) a prior 3-point offense, as determined under the sentencing guidelines; and

                (C) a prior 2-point violent offense, as determined under the sentencing guidelines.

18 U.S.C. § 3553(f)(1).

    At the time Defendant was sentenced in 2019, and before the decision in *Lopez*, the general understanding and reading of Safety Valve was that it was read in the disjunctive—that is, any of subparagraphs (A), (B), *or* (C) of § 3553(f)(1) could disqualify a defendant from Safety Valve protection. Therefore, at the time of his sentencing, it was presumed Mr. Morfin-Rios was ineligible for Safety Valve because his three-point assault conviction met the criteria for paragraph (B). Defendant argues that had he been offered Safety Valve, his sentence would have been lower. (Mot. at 24). It is this sentence disparity that Defendant believes constitutes an extraordinary and compelling circumstance under § 3582(c)(1)(A).

    Although it is unclear in the Ninth Circuit whether a sentencing disparity can constitute an extraordinary and compelling basis warranting relief, district courts are " 'empowered … to consider *any* extraordinary and compelling reason for release that a defendant might raise.' " *United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021) (quoting *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) (emphasis in original). However, even cases where compassionate release has been granted based on sentencing disparities have said it depends on the defendant's "individual circumstances." *See United States v. Lii*, 528 F.Supp.3d 1153, 1165 (D. Haw. 2021) (holding "[e]ach case must be based on the individual circumstances of a defendant, and not all sentencing disparities will meet the high bar of extraordinary and compelling reasons that warrant a sentence reduction.").

    There is a district court split over whether the imposition of a sentence prior to *Lopez* that would have otherwise qualified for Safety Valve is an extraordinary and compelling reason for compassionate release. *Compare United States v. Wright*, No. 19-CR-4286-GPC, 2022 WL 673265, at *4 (S.D. Cal. Mar. 7, 2022) (holding a sentence disparity between defendant's actual sentence imposed before *Lopez* and the sentence he would have

received after *Lopez* constituted an extraordinary and compelling reason for compassionate release); *and United States v. Vascones*, No. 18-CR-5176-CAB, 2022 WL 1004236 (S.D. Cal. Apr. 4, 2022) (same); *and United States v. Adame*, No. 1:18-CR-00391-BLW, 2022 WL 2167893 (D. Id. Jan. 4, 2022) (holding defendant's sentence would have been reduced by 40-50 percent with Safety Valve, which constituted an extraordinary and compelling sentence disparity warranting compassionate release); *with United States v. Young*, No. CR 20-00013 JMS, 2022 WL 9477474, at *5 (D. Haw. Oct. 14, 2022) (holding the defendant's "aggravating factors" made it likely the court would have sentenced defendant at the top of the range, regardless of Safety Valve); *and United States v. Tuisaloo*, No. 19-cr-00036-DKW, 2021 WL 4256280, *1 (D. Haw. Sep. 17, 2021) (defendant failed to show that the court would have sentenced differently after safety valve "given her nearly adulthood-long litany of criminality."). Nonetheless, the Supreme Court permits, but does not compel, district courts to consider nonretroactive changes in sentencing laws, alongside other extraordinary and compelling reasons for granting compassionate release. *See Concepcion v. United States*, __ U.S. __, 142 S. Ct. 2389, 2396 (2022).

At the time Mr. Morfin-Rios was sentenced, he had a total offense level of 33, after a three-level downward departure for Acceptance of Responsibility and a four-level downward departure for Fast Track. (Tr. June 21, 2019 at 5:6-13). At offense level 33, and Criminal History Category II, Defendant's guideline range was 151 to 181-months custody and at least five years of supervised release. ("PSR", ECF No. 24 at 12). Despite the low-end of the guideline range being 151-months, this Court sentenced Defendant to the mandatory minimum of 120-months. (ECF No. 32 at 2). At sentencing, the Court acknowledged Defendant's request for a Minor Role adjustment and found that it was not appropriate. (Tr. June 21, 2019 at 5:2-5, ECF No. 39).

Defendant's contention that his sentence would have been lower if he had received Safety Valve is not compelling. Safety Valve is a two-level downward departure, which allows the court to impose a sentence below the mandatory minimum for charges brought under 21 U.S.C. § 960. *See* 18 U.S.C. § 3553(f). Had Safety Valve debriefing been offered,

or had the Government accepted Defendant's request to be debriefed and Safety Valve applied, his total offense level would have been 31. With a Criminal History Category II, Defendant's modified guideline range would have been 121-151 months, still higher than the 120-month mandatory minimum sentence this Court imposed. Defendant does not highlight anything in the record that would suggest he would have been sentenced below the guideline range, nor does Defendant argue that similarly situated defendants[4] receive an average sentence well below 120-months, thereby resulting in a sentence disparity. In fact, the underlying facts of the charged conduct weigh against finding Defendant would have received what he describes as an average sentence. When Defendant was apprehended at the San Ysidro Port of Entry, he was the sole occupant and registered owner of the vehicle he was driving, found to contain 43-kilograms of 100 percent pure methamphetamine. (PSR at 3). Fifty grams of pure methamphetamine triggers the statutory mandatory minimum sentence of ten years. 21 U.S.C. § 960(b)(1)(H). Defendant was transporting over 500 times that amount. The Government did not recommend a minor role adjustment, which is a common occurrence in most sentencings that result in a significant below-guidelines sentence. This finding is further highlighted by the Court's denial of Defendant's request for a two-level downward adjustment for Minor Role, as Defendant did not meet his burden. (Tr. June 21, 2019 at 5:2-5, ECF No. 39).

Furthermore, Defendant's reliance on statistical data to demonstrate a sentence disparity between sentences imposed after the First Step Act and before *Lopez* with sentences imposed after *Lopez* is unavailing. (*See* Mot. at 22, 23). Defendant fails to acknowledge that the statistics present averages for drug trafficking offenses, without any other qualifying or identifying factors, such as quantity of drugs, any applicable downward

---

[4] That is, individuals who were not granted a minor role adjustment and had an assault or another violent crime conviction warranting a Criminal History Category II. Even at a Criminal History Category I, with an adjusted offense level of 31 after the application of Safety Valve and without a minor role adjustment, Defendant's guideline range would be 108-135 months in custody—still significantly more than the 60-months Defendant seeks.

departures, the nature and circumstances of Defendant's involvement in the offense, personal history and characteristics, and other § 3553(a) factors. Because § 3553(a) factors were not argued at sentencing, any mitigating factors that would have warranted a sentence reduction under this statutory provision are merely speculative at this juncture. (*See* ECF No. 39).

Accordingly, even if Mr. Morfin-Rios satisfied the exhaustion requirement, the Court finds the asserted disparity between Defendant's sentence and the average drug trafficking sentence post-*Lopez* is not an extraordinary or compelling circumstance for compassionate release.[5]

### 2.  Mr. Morfin-Rios' Family Circumstance[6]

Compassionate release may be warranted based on family circumstances. Such situations include those where "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children," as well as "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13, cmt. n.1(C).[7] Although the policy statement in § 1B1.13 does not explicitly mention elderly or ill parents, it allows for the consideration of any "other" extraordinary and compelling circumstances. U.S.S.G. § 1B1.13. Other courts have interpreted this catchall provision to also encompass caretaker needs for parents. *See e.g., U.S. v. Alvarado*, 569 F.Supp.3d 1039 (S.D. Cal. 2021); *United*

---

[5]   The Court's finding that a sentencing disparity under *Lopez* is not an extraordinary or compelling circumstance is limited to, and based upon *Defendant's individual facts and history*.

[6]   Absent Congressional disapproval, amendments to the Sentencing Guidelines become effective November 1, 2023, and include a subcategory to the "Family Circumstances" category for cases where a defendant's parent is incapacitated, and the defendant would be the only available caregiver for the parent.

[7]   The Sentencing Commission's comments in U.S.S.G. § 1B1.13 "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Aruda*, 993 F.3d at 802 (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

*States v. Bucci*, 409 F.Supp.3d 1 (D. Mass. 2019); *United States v. Potenciano*, No. 16-CR-01285-BEN, 2022 WL 3364684, at *2 (S.D. Cal. Aug. 12, 2022).

Mr. Morfin-Rios argues that his need to act as a caregiver for his mother, Ms. Rios, is an extraordinary and compelling circumstance. (Mot. at 29). Ms. Rios suffers from rheumatoid arthritis, sciatica, and cataracts—which impacts her eyesight and mobility and inhibits her day-to-day functioning. (Mot. at 11, Ex. B). Currently, Mr. Morfin-Rios' nineteen-year-old brother, Jared, lives with Ms. Rios. However, she believes the situation to be untenable, as Jared "does not help in the way [Mr. Morfin-Rios does] . . . and [the brother] has a life of his own, [so Ms. Rios] can't count on Jared to help[.]" (*Id.*)

While this Court is deeply sympathetic to Ms. Rios' need for additional help, the Court finds that her caregiver needs are not a basis for granting relief. Ms. Rios has not represented to the Court that the combination of her illnesses has resulted in incapacitation, as she continues to maintain employment. *See United States v. Seals*, 509 F.Supp.3d 259, 263 (E.D. Penn. December 22, 2020) (and cases cited therein). Further, the record does not indicate that Mr. Morfin-Rios is the *only* available caregiver, but that he is the preferred caregiver to Ms. Rios. (Mot. at 8). Accordingly, the Court finds that compassionate release is not appropriate under this basis.

### C. Section 3553(a) Factors

Even assuming Defendant's motion demonstrates extraordinary and compelling reasons for compassionate release, Defendant must persuade the Court that a reduction in sentence would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). Those factors include, among other things, the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; to provide the defendant with needed medical care in the most effective manner; and the need to avoid

unwarranted sentence disparities among defendants who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a).

    Mr. Morfin-Rios asserts that his sentence was driven by the mandatory minimum, and nothing from the offense conduct is aggravating such that a ten-year sentence is mandatory. (Mot. at 31). However, Mr. Morfin-Rios' criminal history and the nature of his past criminal conduct counsel against a reduction in his sentence. According to the pre-sentence report ("PSR"), Defendant's criminal history includes an assault conviction that was related to his affiliation with the Norteno gang. (PSR at 6). The PSR also states Defendant has been arrested for vandalism, driving under the influence, second degree burglary, and illegal possession of a firearm. *Id.*; *see* 18 U.S.C. § 3661; *United States v. Grimaldo*, 993 F.3d 1077, 1084-85 (9th Cir. 2021) (holding a district court did not abuse its discretion in refusing to strike history of prior arrests not resulting in convictions from the defendant's presentence report). Following the burglary arrest in 2016, officers learned Defendant was recovering from a gunshot wound to the abdomen. (PSR at 6). The Court notes Defendant's 2018 arrest for illegal possession of a firearm was also made after that gunshot wound. (*Id.*) Defendant's history of violence, association with firearms, and prior arrests and law enforcement contacts all occurred during his history of gang affiliation. Defendant acknowledges "he will always have to live with the stain of his former gang involvement." (Mot. at 33). While a history of gang involvement is concerning to the Court—as it weighs heavily toward the Court's analysis of Defendant's danger to the community—it may be overcome by establishing a track record of reform, compliance, and good behavior in the community. Unfortunately, Defendant has not given himself a meaningful opportunity to establish such a record.

    The Court has considered a Progress Report prepared by the BOP which states Mr. Morfin-Rios "uses the education and recreation departments to maintain a healthy lifestyle cognitively and physically . . . [he] has not received any incident reports since his sentence began . . . [t]he amount of time he has maintained clear conduct shows he is cognizant of his actions and thinks things through . . . [h]is clear conduct also shows he can manage

adversity and even thrive in a positive way in stressful situations." (ECF No. 40-1, Ex. A). Notably, his Progress Report also lauds Mr. Morfin-Rios' efforts towards his education and commends his interpersonal and cognitive skills. (*Id.*)  While the Court commends Mr. Morfin-Rios for his positive use of his time in prison and his rehabilitative efforts, the Court does not find his behavior in prison currently outweighs the other relevant § 3553(a) factors.  The Court finds that the nature and circumstances of the offense—specifically, the significant quantity of methamphetamine Defendant was attempting to import, and the aforementioned criminal history—warrants the 120-month sentence to adequately reflect the seriousness of the offense, and Defendant has not set forth a record of post-conviction rehabilitation to warrant a favorable consideration of the § 3553(a) factors.  Accordingly, on balance, the Court finds that § 3553(a) factors do not support a reduction in Mr. Morfin-Rios' sentence.

### IV.
### CONCLUSION

For the reasons set forth above, Defendant's Motion for Compassionate Release pursuant to 18 U.S.C. § 3852(c)(1)(A) is **DENIED.**

**IT IS SO ORDERED.**

DATED: July 5, 2022

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE